UNITED STATES of America, Plaintiff,

v.

Dennis Barry ROBERTS, Howard
Schneider, Defendants.

No. CR 79–927–AAH.

United States District Court,
C. D. California.

Jan. 2, 1980.

Andrea Sheridan Ordin, U.S. Atty., Robert L. Brosio, Asst. U.S. Atty., Chief, Criminal Division by Theresa A. Kristovich, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff.

Hochman, Salkin & DeRoy by Bruce I. Hochman, and Stephen V. Wilson, Beverly Hills, Cal., for defendant Howard Schneider.

Alvin S. Michaelson by Bruce I. Hochman, and Stephen V. Wilson, Beverly Hills, Cal., for defendant Dennis Barry Roberts.

## DECISION

HAUK, District Judge.

Defendants Dennis Barry Roberts and Howard Schneider were indicted by the Kadashaw Grand Jury on November 15, 1979. Count One of the indictment charges the defendants with conspiracy to receive stolen property from a bank, to wit, $45,000 in United States Treasury Notes, in violation of 18 U.S.C. § 371; § 2113(c). Count Two of the indictment charges defendant Schneider with receiving the stolen treasury notes and defendant Roberts with aiding and abetting. 18 U.S.C. § 2113(c); § 2. Both defendants have made motions seeking inspection of grand jury minutes and attendance and voting records for the purposes of determining whether the indictment in this case was returned by twelve "informed" grand jurors. Defendant Schneider, joined by defendant Roberts, has also filed a motion to dismiss the indictment on grounds of alleged prosecutorial misconduct.[1]

## I. GRAND JURY PROCEEDINGS

In October 1978 the Churchwell Grand Jury[2] commenced an investigation relating to the theft of $45,000 in negotiable United States Treasury Notes from a Los Angeles branch of the Security Pacific National Bank. Wallace Fortune, a former employee of that Security Pacific branch, testified before the Churchwell Grand Jury, as did defendants Roberts and Schneider. At that time, Fortune testified that he did not steal the treasury notes and denied knowing defendant Schneider or selling him the missing treasury notes. Subsequently, however, Fortune was indicted by the Churchwell Grand Jury in March 1979 for misapplication of funds from a bank in violation of 18 U.S.C. § 656 in connection with the theft of the treasury notes. A plea agreement was later entered into between Fortune and the Government permitting him to plead to a superseding misdemeanor charge in exchange for cooperation in the continuing investigation of the theft and use of the stolen treasury notes.

Defendant Schneider when testifying before the Churchwell Grand Jury stated that he purchased the $45,000 of treasury notes from a man whom he later learned was Wally Fortune in December, 1976, for $40,000; that Fortune and another man (later identified as one Eric Touchard) had come to his home in Beverly Hills after an introduction from Schneider's friend and co-defendant Dennis Roberts; that Schneider was told by Fortune's friend that he would sell the notes at a discount because he was going through a divorce and did not want to sell the notes through a brokerage firm; that Schneider had been told that these treasury notes had been offered for sale to the Cantor, Fitzgerald & Co., Inc., a stock brokerage firm with which he had an account and that Schneider telephoned that firm for purposes of checking to see whether the treasury notes were authentic; that Schneider was told by two members of that firm, Jack Meyers and Bert Cohen, that they had checked out the notes and found them to be without any problems; that they thought $40,000 was a good price and were going to buy them but changed their minds. Schneider stated that only after being given this information did he buy the treasury notes.

On July 5, 1979, Fortune testified before the Kadashaw Grand Jury (the Churchwell Grand Jury having completed its term in March 1979). Fortune admitted stealing the treasury notes from the branch of Security Pacific National Bank where he had been employed and sold them with the assistance of a friend, Eric Touchard, to defendant Schneider at the suggestion and direction of defendant Roberts.

Schneider's counsel, in monitoring the Kadashaw Grand Jury's investigation, en-

---

**1.** Defendant Roberts also joined in all of defendant Schneider's motions. See Robert's Motion to Dismiss, filed December 4, 1979, page 4, lines 8 through 11.

**2.** Grand jury proceedings in this case initially were conducted before the Churchwell Grand Jury. The Kadashaw Grand Jury began to hear testimony relating to the investigation in June 1979.

deavored in late July 1979 to bring to the attention of the prosecutor in charge of the investigation the exculpatory testimony of one Roland Pagan. Pagan reportedly told Schneider and his counsel that he had overheard conversations between defendant Roberts and Wallace Fortune which tended to exculpate Schneider and shift culpability towards Roberts, Fortune and his accomplice, Eric Touchard.[3] These efforts apparently ended in failure as the prosecutor at that time did not subpoena Pagan to appear before the grand jury. Later, in August 1979, Schneider's counsel also requested the prosecutor to present the results of a polygraph examination taken by Schneider which tended to corroborate his version of the events which took place. A conference between counsel, the prosecutor and her superiors in the United States Attorney's Office also proved to be of no avail and the results of the polygraph test were not presented to the Grand Jury. During this period, other exculpatory evidence forwarded to the prosecutor which was not presented to the grand jury included information about the criminal background of Fortune's accomplice Eric Touchard and the affidavit of Bert Cohen, an Executive Vice President of Cantor, Fitzgerald & Co., Inc., corroborating Schneider's contention that he checked with that brokerage firm about the authenticity of the treasury notes before he purchased them.

3. Pagan told Schneider and his counsel that he overheard a conversation between Fortune and Roberts at Roberts' store, at which Pagan was employed, wherein Fortune told Roberts that he had taken the subject treasury notes from the bank and asked Roberts how to dispose of them. According to Pagan, Roberts suggested that Fortune try and sell them to Jack Meyer at the stock brokerage firm of Cantor, Fitzgerald & Co., Inc., and told Fortune to concoct the story that they would be sold at a discount ($40,000 sale price) because of a divorce proceeding. Pagan, purportedly overheard another conversation at Roberts' store shortly thereafter, wherein Fortune told Roberts that the firm of Cantor, Fitzgerald decided not to buy the notes and Roberts told Fortune to use the same pitch on Howard Schneider.

4. The prosecutor stated to Judge Pregerson at the September 27, 1979 hearing:

On September 27, 1979, Judge Pregerson of our District Court heard defendant Schneider's "Motion To Compel Exculpatory Evidence Before The Grand Jury." At that time the Government prosecutor promised to Judge Pregerson she would present to the Grand Jury any exculpatory information brought to her attention and made available to her.[4] On that same date defendant Schneider testified before the Kadashaw Grand Jury, as did Roland Pagan, Schneider's exculpatory witness; but none of the other exculpatory evidence that had been brought to her attention and made available to her was presented to the Grand Jury.

Subsequently, on November 15, 1979 an indictment was returned, charging defendants Roberts and Schneider with the aforementioned violations.

## II. THE "INFORMED" GRAND JURY REQUIREMENT

While recognizing the independent roll of a prosecutor in grand jury proceedings, the Court also acknowledges its duty to supervise the work of grand juries in instances where there is a clear basis in fact and law for doing so. *United States v. Chanen,* 549 F.2d 1306, 1313 (9th Cir. 1977); *United States v. Samango,* 607 F.2d 877 (9th Cir. 1979). To safeguard and preserve the independence of the grand jury proceedings, this Court on several occasions has

"I advised Mr. Wilson that the Government is more than willing, in this instance, although it is not a matter of record, that we are now required to present exculpatory information; that this is an investigatory proceeding, and I'm more than willing to present exculpatory evidence to the Kadashaw Grand Jury that is brought to my attention that I have available."

In re Grand Jury Proceedings, Howard Schneider, C.D.Cal.Misc. No. 7929, Reporter's Transcript of Proceedings, pp. 9–10.

We note with emphasis that the exculpatory evidence "brought to the attention" of and made "available" to the prosecutor was set forth in great detail in the motion before Judge Pregerson, including the Pagan testimony, the Cohen affidavit, the results of the polygraph test and Touchard's prior criminal convictions.

conducted in-camera reviews of grand jury records, minutes, et al. Here, the serious charges of prosecutorial misconduct have convinced the Court that such an in-camera review of grand jury transcripts, voting and attendance records, etc., was necessary in the interest of justice.

■ The Court's review of the Kadashaw Grand Jury's attendance and voting records (Court Exhibit 1) reveals that only eight members of the Grand Jury were present for all the sessions in which testimony was presented relating to the investigation of the stolen treasury notes. Even assuming the Government is permitted to count absentee grand jurors to whom was later re-read testimony rendered in their absence, the number of "informed" grand jurors totals eleven, and falls short of the twelve required for a viable indictment.

For a grand jury to indict, twelve or more jurors must vote to return an indictment. F.R.Crim.P. 6(f). In *United States v. Leverage Funding Systems, Inc., et al.,* 478 F.Supp. 799 (C.D.Cal.1979), Pregerson, D. J., it was held that an indictment fails to meet the minimum requirements of F.R. Crim.P. 6(a) and due process when it is returned by less than twelve "informed" grand jurors—i. e., by less than twelve jur-

ors who attended all grand jury sessions in which testimony pertaining to the indictments was presented.[5] We, in embracing and concurring with the decision of our brother, Pregerson, find that the rule he has and now we have adopted marks the critical point at which the courts must assert themselves in order to protect due process and to preserve established Constitutional principles requiring the maintenance of the grand jury's independence and integrity.[6] See: *Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962).

Thus, the Court finds that the indictment must be dismissed because here in this case it was returned by less than twelve *informed* grand jurors. The Court now turns to defendants' motion to dismiss the indictment for prosecutorial misconduct, the merits of which were orally and informally addressed and ruled upon during argument in this matter.

### III. MOTION TO DISMISS INDICTMENT FOR PROSECUTORIAL MISCONDUCT

■ Defendants charge that the Government prosecutor in charge of the investigation leading to their indictment was guilty of flagrant misconduct for failure to pro-

---

**5.** The Ninth Circuit decision of *Lustiger v. United States,* 386 F.2d 132 (9th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1042, 19 L.Ed.2d 1142 (1968) is not applicable here. In *Lustiger,* the defendant alleged that, at each grand jury session, more than sixteen but less than all the grand jurors were present. The Court held that "[I]ndividual grand jurors comprising more than a quorum attended all sessions, and were present when the vote was taken on the indictment." *Id.* at 139. As Judge Pregerson points out, the use of the term "individual" is ambiguous and leads to conflicting possible interpretations when applied to the issues raised herein. *United States v. Leverage Funding Systems, Inc., Typewritten Opinion,* fn. 3. Thus, the holding in *Lustiger* is not controlling here.

Moreover, the views of the Second Circuit as expressed in *United States ex rel. McCann v. Thompson,* 144 F.2d 604 (2nd Cir. 1944) and *United States v. Colasurdo,* 453 F.2d 585 (2nd Cir. 1971) are not persuasive because the Court believes and is firmly convinced that adequate procedures do exist, permitting government

prosecutors to comply with the *Leverage Funding* rule. As Judge Pregerson so aptly stated:

If grand jurors were told that their ability to cast a valid vote on an indictment hinges on their faithful attendance, then perhaps they would take their duties more seriously and appear at all sessions. It is not asking too much to require the faithful attendance of at least twelve out of twenty-three members of a constitutionally mandated body exercising great power over peoples' lives. To demand less casts a disparaging light on the grand jury as an institution and endorses an appearance of unfairness which has no place in our system of criminal justice.

*United States v. Leverage Funding Systems, Inc.,* 478 F.Supp. 799 (C.D.Cal.1979).

**6.** The Court is aware of *United States v. Godoy,* C.D.Cal. No. CR–79–660(A) (November 6, 1979), another recent decision of the District, where Judge Gray, in an oral ruling, took a view directly to the contrary. With all due respect to Judge Gray, the Court feels that the holding in *Leverage Funding* is the correct rule to apply in this context.

vide exculpatory evidence to the indicting Grand Jury and for questionable tactics employed during the course of the investigation. As stated earlier, the Court has a limited responsibility to oversee the work of grand juries, especially where serious allegations of prosecutorial abuse are brought to its attention. *United States v. Chanen, supra,* 549 F.2d 1306, 1313; *In re Grand Jury for November, 1974 Term,* 415 F.Supp. 242, 244 (W.D.N.Y.1976). Moreover, the power of the Court to dismiss an indictment for prosecutorial misconduct on the basis of its supervisory powers is unquestioned in this Circuit. *United States v. Samango,* 607 F.2d 877 (9th Cir. 1979); *United States v. Owen,* 580 F.2d 365 (9th Cir. 1978).[7]

■ An exhaustive review of the voluminous grand jury transcripts (Court Exhibits 2A through 2M)[8] and pleadings of the parties has convinced this Court that here the "cumulative effect" of the prosecutor's actions deprived defendants of due process and operated to bias the Grand Jury. The Court finds particularly disturbing the following indiscretions: (1) the prosecutor's failure to abide by her promise to Judge Pregerson on September 27, 1979 that she would present to the Grand Jury all excul-

patory evidence made available to her; (2) the failure to present to the Grand Jury the affidavit of Bert Cohen which tended to corroborate the version given by defendant Schneider in his testimony before both the Kadashaw and Churchwell Grand Juries; (3) the "gratuitous" irrelevant remarks of the prosecutor in attempting to discredit and slant the testimony of Schneider's exculpatory witness Roland Pagan;[9] and (4) the failure to provide the polygraph evidence to the Grand Jury despite the prosecutor's guarantee to Judge Pregerson that all exculpatory evidence would be presented to the Grand Jury, and compounding this indiscretion by erroneously but unequivocally telling the Grand Jury that the polygraph evidence was inadmissible.[10]

Thus it is clear from the above that the Government is guilty of prosecutorial misconduct for breaching the understanding with Judge Pregerson to present all exculpatory evidence (including not only the testimony of Roland Pagan, but the polygraph results, the affidavit of Bert Cohen, and the prior criminal record of Touchard). Moreover, the unwise and prejudicial remarks made during the testimony of the exculpa-

---

**7.** Dismissal of an indictment is required in only flagrant cases in which the grand jury has been overreached or deceived in some particular way, as where perjured testimony was knowingly presented. *United States v. Thompson,* 576 F.2d 784 (9th Cir. 1978). However, the Court believes it is clear that other examples of prosecutorial misconduct having the "cumulative effect" described herein, do also justify the dismissal of an indictment. *United States v. Samango,* 607 F.2d 877 (9th Cir. 1979).

**8.** These Court Exhibits 2A through 2M are Grand Jury Testimony as follows:
*Before the Churchwell Grand Jury:*
2A—Fortune; 2B—Schneider; 2C—Roberts; 2D—Mendelson; 2E—Touchard.
*Before the Kadashaw Grand Jury:*
2F—Fortune; 2G—Touchard; 2H—Schneider; 2I—Pagan; 2J—Roberts; 2K—Cohen; 2L—Mendelson; 2M—Agent Bigelow, self and rereading of Fortune Testimony in Ex. 2F.

**9.** The prosecutor attempted to bias the Grand Jury with this sort of questioning of Pagan:
"Q. What are you getting in return for testifying?
A. Nothing, in fact it is costing me.

Q. You are not getting anything?
A. Today was my first day on a new job and I am sitting here.
Q. Are you getting any remuneration from Mr. Schneider?
A. What do you mean by that word?
Q. Are you getting any money or favors or anything else from Mr. Schneider?
A. No, I am not. I would like to have him cover my time, but he has mentioned nothing about any payments and I just didn't ask.
Q. What is your motivation in doing this?
A. I know what Mr. Roberts is doing; he did it to me." (Court's Ex. 2H, pp. 19–20)

**10.** The Court also disapproves of the prosecutor's bold statement to the Grand Jury that polygraph evidence is inadmissible at trial. Kadashaw G.J. Tr. Ct's Ex. 2H, p. 74. Such statements are untrue. The Ninth Circuit has held that polygraph evidence *is* admissible, within the trial court's discretion. *United States v. DeBetham,* 470 F.2d 1367 (9th Cir. 1972); same case in trial court, 348 F.Supp. 1377 (S.D.Cal.1972).

tory witness Pagan cannot be condoned. All of this misconduct is clearly inconsistent with and in violation of Department of Justice guidelines set forth in the United States Attorney's Manual, Sections 9–11.015 and 9–11.334.[11]

The Government prosecutor must always keep in mind that the grand jury is, by law and long standing tradition stemming from early English reaction against Star-Chamber proceedings centuries ago, a shield for every person against an over-reaching, over-zealous, albeit honest and perhaps even well-intentioned, prosecutor, vigilantly to be protected by the courts. It is not, and can never be permitted to become, a sword, sharply to be honed by the courts for any kind of possible attack upon any person, whether wielded by the prosecutor in good faith or not. Nor can a prosecutor, recklessly or even unwittingly, mislead or deceive the court by promising to disclose all exculpatory evidence brought to the attention of and made available to the prosecutor and then failing to do so. This is impermissible and beyond the Constitutional parameters governing the conduct of the prosecutor. Where the rights of the individual person are at stake, the Government (and its prosecutor, we might add), would be well advised to heed the felicitous phrasing of Mr. Justice Douglas, who, in commenting upon Mr. Justice Holmes' statement in *Rock Island A. L. & R. Co. v. United States,* 254

U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 that "[M]en must turn square corners when they deal with the Government," stated: ". . . I think the Government in moving against the citizen should also turn square corners." *Commissioner of Internal Revenue v. Lester,* 366 U.S. 299, 306, 81 S.Ct. 1343, 1348, 6 L.Ed.2d 306 (1961).

Therefore, in addition to deciding that the instant indictment is invalid because there were not at least twelve "informed" grand jurors voting to return the indictment, the Court also rules that the indictment should be dismissed because of prosecutorial abuse that was arbitrary, capricious and unreasonable, rising to Constitutional dimensions and violative of due process.

LET AN APPROPRIATE ORDER BE ENTERED ACCORDINGLY.

## ORDER DISMISSING INDICTMENT

This matter came on for hearing before the Court on December 17, 1979, on the Motions of the defendant Schneider To Dismiss the Indictment under Rule 12(b), Federal Rules of Criminal Procedure, and To Permit Inspection Of Grand Jury Minutes And Attendance And Voting Records. Defendant Roberts joined in all these Motions and filed his own Motion to Dismiss.

Bruce I. Hochman, Esq., and Stephen V. Wilson, Esq., of Hochman, Salkin and De-

---

**11.** The United States Attorney's Manual Section 9–11015 states:

*The Role of the Prosecutor*

In his dealings with the grand jury, the prosecutor must always conduct himself as an officer of the court whose function is to insure that justice is done and that guilt shall not escape or innocence suffer. He must recognize that the grand jury is an independent body, whose functions include not only the investigation of crime and the initiation of criminal prosecution but also the protection of the citizenry from unfounded criminal charges. The prosecutor's responsibility is to advise the grand jury on the law and to present evidence for its consideration. In discharging these responsibilities, he must be scrupulously fair to all witnesses and must do nothing to inflame or otherwise improperly influence the grand jurors.

Section 9–11.334 of that Manual states:

*Presentation of Exculpatory Evidence*

Although neither statutory nor case law imposes upon the prosecutor a legal obligation to present exculpatory evidence to the grand jury (*United States v. Y. Hata Co.,* 535 F.2d 508, 512 (9th Cir. 1976), *cert. denied,* 429 U.S. 828, 97 S.Ct. 87, 50 L.Ed.2d 92; *Loraine v. United States,* 396 F.2d 335, 339 (9th Cir.), *cert. denied,* 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968)), it is the Department's internal policy to do so under many circumstances. For example, when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence which directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person.

For full text see Ex. F to defendant Schneider's Motion To Dismiss and Points and Authorities In Support Thereof.

Roy represented the defendant Schneider, and also appeared for Alvin S. Michaelson, Esq., in representing the defendant Roberts; Assistant United States Attorney Theresa A. Kristovich, Esq., appeared for the Government. The Court has read and considered the Motions, and the papers submitted in support thereof and in opposition thereto, and the Grand Jury Minutes, Attendance and Voting Records of the Grand Jury (Court Exhibit 1), as well as the Grand Jury Transcripts of all of the testimony presented to both the Churchwell and the Kadashaw Grand Juries.

It is clear that the indictment is invalid because there were not at least 12 grand jurors voting for the indictment who were in attendance at all sessions at which the grand jury heard evidence.

It is also clear that the Government was guilty of prosecutorial misconduct in that (1) the Government knowingly breached an agreement made in open court in a prior case, "In re Grand Jury Proceedings, Howard Schneider," C.D.Cal.Misc. No. 7929, before Judge Harry Pregerson of this Central District of California Court to present all exculpatory evidence to the Kadashaw Grand Jury as outlined therein in defendant Schneider's "Motion to Compel The Presentation of Exculpatory Evidence Before The Grand Jury;" and (2) that the Government impermissibly manipulated and misled the Grand Jury by depriving it of its opportunity to evaluate the credibility of witnesses and by making prejudicial remarks to influence it.

Moreover, it is beyond doubt that the prosecutor knowingly refused to follow Department of Justice guidelines in that the prosecutor failed to present exculpatory evidence clearly negating guilt, failed to give target warnings to defendant Schneider, failed to conduct herself as an officer of the Court whose function is to insure that justice is done and that the guilty shall not escape nor the innocent suffer, failed to recognize that the Grand Jury is an independent body for the protection of all persons from unfounded criminal charges, failed to be scrupulously fair to all witnesses, and failed to do nothing to inflame or otherwise improperly influence the grand jurors.

Thus, the indictment should be dismissed for all of the reasons the Court has previously stated orally on the record at the hearing on the Motions, and its Decision heretofore made and entered herein, including both the lack of twelve *informed* grand jurors voting to return the indictment, and prosecutorial abuse that was arbitrary, capricious and unreasonable, rising to Constitutional dimensions in violation of due process.

Now, the matter having been argued and submitted, and the Court being fully advised, and good cause appearing therefore,

IT IS HEREBY ORDERED that, in the exercise of the Court's supervisory powers to insure the fair administration of justice and under the due process clause of the Fifth Amendment to the Constitution, the indictment in the above-entitled action be, and it is hereby dismissed as to both the defendants Schneider and Roberts, with prejudice.