**UNITED STATES of America,**

v.

**George Philip NELSON, Hak Soo Ghun, a/k/a "Hak Soo Dickenson," Thomas S. Galgano, and Robert Thomas Harvey, Defendants.**

No. 84 Cr. 293 (SWK).

United States District Court, S.D. New York.

April 11, 1985.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Frank Maas, Asst. U.S. Atty., New York City, for U.S.

Kase & Druker, Garden City, N.Y., for George Philip Nelson; James O. Druker, Paul Schwartz Frome, Garden City, N.Y., of counsel.

David Cooper, New York City, for Hak Ghun.

Kramer, Levin, Nessen, Kamin & Frankel, New York City, for Robert T. Harvey; Gary P. Naftalis, Scott D. Heller, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

The indictment in the instant criminal prosecution was filed on May 14, 1984. This indictment contained forty-six counts, and originally included seven defendants. The indictment alleged that the defendants devised, and participated in, a scheme to defraud approximately twelve hundred investors out of more than eleven million dollars.

The indictment alleged that the defendants were all connected, in a variety of capacities, with the firm of Nelson, Ghun and Associates, Inc. (hereinafter referred to as "NGA"). Through their connection with NGA, the defendants are alleged to have defrauded investors out of thousands of dollars by obtaining investors' funds for managed commodity futures accounts, for managed commodity futures pools, and for a "private placement program" through which investors could lend funds to NGA.

Five counts of the indictment in the instant case have been completely resolved through the entry of guilty pleas by the three defendants named in those counts. David Alan Franklin, George Wilson Glass and Robert V. Simon have entered guilty pleas. Only Simon remains to be sentenced. Thus, forty-one counts of the indictment and four defendants remain in the instant case.

Counts one through three and five through thirty-seven charge that the remaining four defendants committed various acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Counts thirty-seven through forty charge that the defendants Nelson and Ghun committed commodity fraud in violation of 7 U.S.C. §§ 6o and 13. Counts forty-one and forty-two charge that Nelson and Ghun gave false testimony under oath in violation of 18 U.S.C. § 1623.

The indictment alleges that Nelson and Ghun were officers and principals of NGA. It also alleges that Harvey was a salesman, a sales manager, and eventually, the chief operating officer of NGA. It further alleges that Galgano was a salesman for NGA.

*Defendants' Motions*

Defendants Nelson, Ghun, and Harvey have filed a series of motions. Galgano has neither filed any motions nor joined in his codefendants' motions. Harvey has requested this Court to issue the following orders:

1) For an order dismissing the instant indictment;

2) In the alternative, for an order severing his trial from that of his three remaining codefendants;

3) For an order granting a bill of particulars;

4) For an order compelling the production of a Government witness list;

5) For an order compelling early disclosure of *Brady* material;

6) For an order granting certain discovery pursuant to Fed.R.Crim.P. 16.

See Harvey's Notice of Motion, dated November 2, 1984.

Ghun in his omnibus motion, has requested this Court to issue the following orders:

1) That Ghun be provided with the names of all witnesses, and with the following information for each witness:

a. A full record of arrests and criminal convictions of any prospective witness the government intends to call at the trial of the above-captioned matter.

b. The full and complete statement of all promises, rewards, and/or inducements of any kind made by the government, its prosecutors, its agencies, or its agents to induce or encourage the giving of testimony or information made to: (1) any prospective witness whom the government intends to call at the trial of the above-captioned matter; (2) any witness who testified before the grand jury; or (3) any witness who assisted the government in its investigation and preparation of the above-captioned matter.

c. A declaration as to whether the witness has ever testified before, and if so, the circumstances of that testimony.

d. Any evidence which may be used to impeach or discredit any witness the government intends to call at the trial of the above-captioned matter, particularly, but not exclusively, inconsistent statements of a witness or between witnesses, statements of bias or prejudice against the defendant by a witness, or admissions of poor memory by a witness.

e. A full and complete statement of any and all criminal cases presently known by the government to be pending against any witness the government intends to call in its presentation of its case in chief at the trial of the above-captioned matter, regardless of whether or not these cases are the subject of promise, reward or inducement.

f. A full and complete statement of any and all criminal conduct which the government has knowledge has been committed by any witness the government tends to call in its case in chief at trial regarding which there has been no conviction, regardless of whether or not these crimes are presently the subject of a promise, reward or inducement, and regardless

of whether or not these crimes are presently the subject of a pending criminal charge.

g. Whether or not the government has requested or authorized the payment of any sums of money to any informant, cooperating witness, or co-conspirator who has agreed to testify for the government, who participated in the investigation which generated the above-captioned indictment, or to any other prospective witness.

h. Any logs, records, or other documents relating to the payment of any sums of money to any individual set forth in subparagraph (g), and the source of any such payment.

i. The identities of any and all witnesses who have been offered immunity by the government.

j. Whether or not any government witnesses have been hospitalized or treated for psychiatric or emotional disorders or alcoholism or drug abuse, and if so, the names of any institutions involved and the dates of any hospitalization, and any and all reports relating to any treatment for such condition.

k. Whether any prospective witness has been incarcerated in federal or state prison, and if so, the prison records of any such witness.

2) Directing the Government to disclose, in advance of trial, all evidence of alleged prior or subsequent similar acts which it intends to introduce at trial.

3) Directing the Government to provide Ghun with a premarked exhibit list no later than one week prior to trial and to also provide Ghun with drafts of any transcripts of conversations which the Government will utilize at trial.

4) Directing the Government to disclose statements it intends to offer pursuant to Fed.R.Evid. 803(24) or 804(b)(5).

5) Directing the government to furnish Ghun with the substance of all state-

ments it intends to offer pursuant to Fed.R.Evid. 801(d)(2), (C), (D) and (E).

6) Granting on behalf of Ghun all motions made by codefendants which are not inconsistent with the particular motions filed by Ghun.

7) Granting a bill of particulars.

8) Dismissing counts thirty-seven through forty of the indictment.

See Ghun's Notice of Omnibus Motion, dated November 20, 1984.

Nelson has requested this Court to issue the following orders:

1) Severing his trial from that of his codefendants, pursuant to Fed.R.Crim.P. 8(b) and 14.

2) Severing Counts forty-one and forty-two from the instant indictment pursuant to Fed.R.Crim.P. 8(a).

3) Dismissing Counts thirty-seven through forty pursuant to Fed.R.Crim.P. 12(b)(2) and because these counts are duplicitious.

4) Granting all of the motions filed by his codefendants to the extent that they apply to him.

See Nelson's Notice of Motion, dated November 2, 1984.

A discussion of the resolution of these motions follows.

*Dismissal of The Indictment*

Harvey has moved to dismiss the indictment. This is required, he contends, because the Government failed to present to the grand jury evidence which was available to the Government and which substantially tended to negate any guilt by Harvey. Harvey contends that the Government had an affirmative obligation to present this so-called exculpatory evidence to the grand jury. He further contends that the Government's failure to present this evidence "was clear prejudice to Harvey" and, therefore, dismissal of the indictment is mandated.

The alleged exculpatory evidence, which Harvey asserts the Government had an affirmative obligation to present to the grand jury, consists of three specific items. These are:

1) An alleged "finding", by Judge Duffy of this Court, that Harvey's testimony in an NGA-related civil action, which charged Harvey with fraud, was credible.

2) The results of a polygraph examination which "found" that Harvey was telling the truth when he denied having committed fraud with regard to his activities at NGA.

3) The "fact" that only one of several victims of Harvey's alleged fraud brought a Commodities Futures Trading Commission (hereinafter referred to as "CFTC") reparations proceeding against Mr. Harvey.

An examination of Harvey's contentions and the Government's conduct in presenting the instant case to the grand jury leads the Court to the clear conclusions that there is no basis to dismiss the indictment and that the Government fully performed all of its ethical obligations regarding the presentation of a case to a grand jury. Based on the reasons which follow, the motion to dismiss the indictment is DENIED.

■ As for Harvey's first item of so-called exculpatory evidence, the Government has satisfactorily demonstrated to the Court that this information was, in fact, adequately presented to the grand jury which handed up Harvey's indictment. *See* Affidavit of Assistant United States Attorney Frank Maas, sworn to on January 11, 1985, at ¶¶ 25–26, 30–33. Thus, Harvey's contention with respect to Judge Duffy's "finding" is meritless.

Harvey next contends that the Government had an affirmative obligation to present to the Grand Jury the results of a polygraph examination conducted by Harvey. Harvey alleges that the results of this examination show that he was telling the truth when he denied committing any fraud while working at NGA.

"The law of this Circuit is that dismissal of an indictment is justified to achieve either of two objectives: to eliminate preju-

dice to a defendant; or, pursuant to our supervisory power, to prevent prosecutorial impairment of the grand jury's independent role." *United States v. Hogan*, 712 F.2d 757, 761 (2d Cir.1983) (citations omitted). Neither objective would be furthered by dismissal of the instant indictment.

Harvey contends that the Government's clear ethical obligation and affirmative duty to present to a grand jury the results of a polygraph examination conducted by a prospective defendant which are favorable to the defendant was recognized by the Court in *United States v. Roberts*, 481 F.Supp. 1385 (C.D.Cal.1980). A close reading of that case, however, indicates that no such duty was recognized. First, the *Roberts* court clearly stated that dismissal of the indictment was required because "it was returned by less than twelve *informed* grand jurors." *Id.* at 1388. It was only as an additional, alternative ground, that the Court dismissed the indictment, due to what it described as "prosecutorial abuse [of the grand jury process] that was arbitrary, capricious, and unreasonable, rising to Constitutional dimensions and violative of due process." *Id.* at 1390.

■ In *Roberts, supra,* the prosecutor violated a specific promise to the Court that all exculpatory evidence, including the polygraph evidence, would be presented to the grand jury and also erroneously informed the grand jury that such evidence was not admissible at trial.[1] *Id.* at 1389. No such conduct occurred in the instant case.

■ Harvey's claim has already been clearly rejected by this Court. *See United States v. Tolchin*, 79 Cr. 858 (LWP), slip op. at p. 2–5, n. 1 (S.D.N.Y. April 3, 1980). Moreover, the Court of Appeals for the Second Circuit continues to adhere to the view "that polygraph evidence is speculative ..." *United States v. Bari*, 750 F.2d 1169, 1179 (2d Cir.1984) (citations omitted). Based on the foregoing, the Court con-

---

1. In *Roberts, supra,* the prosecutor's statement was erroneous because the Court of Appeals for the Ninth Circuit has concluded that polygraph evidence is admissible within the trial court's discretion. *Roberts* at 1389, n. 10. This is not the case in this Circuit.

cludes that the polygraph evidence in the instant case was not evidence "negating guilt which, if presented, would 'reasonably be expected to lead the jury not to indict.'" *United States v. Dyman,* 739 F.2d 762, 768 (2d Cir.1984). Thus, the Government had no affirmative obligation to present this evidence to the grand jury.

■ The third item of evidence which Harvey contends should have been, but was in fact not presented to the grand jury, is the "fact" that only one of Harvey's former customers filed a CFTC reparations proceeding against Harvey. This "fact" has absolutely no relevance to the issue of whether probable cause existed to believe that Harvey committed the acts alleged in the indictment. Moreover, it would appear that Harvey never requested the Government to present this evidence to the grand jury. *See Maas Affidavit, supra,* ¶¶ 34–38. "Despite recent movements for revision of grand jury procedure, a prosecutor is not presently obligated to search for and submit to a grand jury evidence favorable to the defense or negating guilt, when it has not been requested by the grand jury." *United States v. Ciambrone,* 601 F.2d 616, 622 (2d Cir.1979) (footnote and citations omitted).

Even if this evidence had specifically been brought to the Government's attention, however, the Court concludes that this is not the quality or type of evidence which the Government has an affirmative obligation to present to the grand jury. Thus, Harvey's motion to dismiss the indictment is DENIED. Although Ghun and Nelson have joined in all motions made by other defendants which apply to them, they have made no claim similar to Harvey's with respect to this indictment. To the extent that they join in the motion to dismiss the indictment, the motion is DENIED with respect to Ghun and Nelson as well.

*Severance*

Harvey and Nelson, specifically, have moved for severances. Harvey asserts two reasons in support of his request for a severance. First, he contends that he is a "minor and peripheral figure" in the scheme charged in the indictment. *See* Harvey's Memorandum of Law, dated November 2, 1984, at p. 18. In view of this, he contends that he will be subject to prejudicial spillover, presumably from the vast quantity of evidence which will be introduced against other defendants, but not him. Secondly, Harvey contends that there is a "critical need" to obtain the testimony of his codefendant Nelson, and that this can only be done if Harvey's trial is severed from Nelson's trial. Affidavit of Gary P. Naftalis, sworn to on November 2, 1984, at ¶¶ 20–22.

Harvey's motion for a severance is made pursuant to Fed.R.Crim.P. 14. That rule states:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection in camera any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

Fed.R.Crim.P. 14.

■ The Court strongly disagrees with Harvey's characterization of himself as a "minor and peripheral figure." Harvey is named in twelve of forty-one counts which remain to be tried. The Government contends that he was a salesman, sales manager and, ultimately, the chief operating officer of NGA. This hardly renders him a minor figure in the alleged scheme to defraud investors. Moreover, the counts in which he is charged allege conduct which is clearly a part of the overall larger scheme or transaction to defraud NGA investors.

In view of his alleged role in NGA's affairs and the scheme charged in the indictment, the Court fails to see how there

could be any prejudice to Harvey from a joint trial with his three remaining codefendants. And Harvey does not raise any claim that he wishes to present a defense which may conflict with those of his codefendants. A severed trial would serve only to delay the complete resolution of this indictment while unduly taxing scarce judicial resources. Should it appear to the Court that there is any danger of even slight prejudice to Harvey during the trial, this can be remedied by appropriate instructions to the jury during the charge.

■ Harvey also contends that the need to obtain Nelson's testimony requires that Harvey receive a severed trial. In considering this point the Court relies upon *United States v. Finkelstein*, 526 F.2d 517 (2d Cir.1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976), for guidance. This Court can properly consider the following factors:

1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege;

2) the degree to which the testimony would be cumulative;

3) the counter arguments of judicial economy; and

4) the likelihood that the testimony would be subject to substantial, damaging impeachment.

*Id.* at 523–524 (citations omitted).

■ With regard to the first factor, Harvey has submitted an affidavit, sworn to by Nelson on November 21, 1984. In this affidavit Nelson asserts that he has not yet decided whether to testify at his own trial. He then asserts that he would be willing to testify at a separate trial for Harvey if that were held *subsequent to* Nelson's trial. He does not state that he would waive his Fifth Amendment privilege at a subsequent trial, even though, in the event he was convicted at his own trial, Nelson would retain this privilege while his conviction was appealed. Because of this, and be-

cause there is no guarantee that a severed trial for Harvey would be held subsequent to Nelson's trial, the showing as to Nelson's likelihood to testify and waive his Fifth Amendment privilege is insufficient. This is particularly true where, as here, Nelson has specifically expressed a concern about possibly waiving his Fifth Amendment privilege at his own trial. *See* Nelson Affidavit, *supra*, at ¶ 2.

The second factor to be considered is the degree to which the proferred testimony would be cumulative. Nelson asserts that he would testify to the following:

a. that, to the best of my [Nelson's] recollection Mr. Harvey had no role in the preparation of the sales literature distributed by NGA;

b. that, to my knowledge, Mr. Harvey never lied to customers or instructed salesmen to lie to customers;

Nelson Affidavit at p. 2.

As to the first item of Nelson's proffered testimony, the Government has represented that it does not dispute the fact that Harvey "played no role in the preparation of the NGA sales literature." Maas Affidavit, *supra*, at ¶ 21. Thus, this item of testimony would be entirely cumulative and totally unnecessary.

As to the second item of testimony, while it would not necessarily be cumulative there appears to be a significant likelihood that such testimony would be subject to substantial and damaging impeachment. *See* Maas Affidavit, at ¶¶ 22–24.

Finally, the considerations of judicial economy are substantial in this case. The trial of this case is expected to last for a lengthy period of time, and will involve a large number of documents. Separate trials would involve essentially the same proof, including many if not most of the same documents. Indeed, if the Court were to grant Harvey's and Nelson's severance motions, four separate trials would be required for the instant indictment.[2] Thus,

2. Four separate trials would result because Nelson has, in effect, asked for two separate trials for himself (one dealing with the two perjury counts and the other for the remaining counts), Harvey has requested a separate trial and Galgano and Ghun would remain to be tried together.

consideration of the factor of judicial economy militates strongly in favor of denying Harvey's severance motion.

In view of the foregoing discussion, it appears that pursuant to the guidelines established in *United States v. Finkelstein, supra,* Harvey has not made the requisite showing to obtain a severance. Accordingly, Harvey's motion, pursuant to Fed.R.Crim.P. 14, for a severed trial is hereby DENIED.

Nelson has also moved for a separate, severed trial pursuant to Rules 8(b) and 14 of the Federal Rules of Criminal Procedure. In addition, he has moved, pursuant to Fed.R.Crim.P. 8(a), for a severed trial on Counts forty-one and forty-two of the indictment. With regard to his request for a severed trial from that of his codefendants, Nelson advances two arguments. First, he contends that the instant indictment charges two separate, independent schemes; one involving fraudulent activity with managed commodity futures pools and accounts, and the second involving loans to NGA through a "private placement program," and that he is not involved in this latter scheme. Nelson's second reason for a severance is that he will suffer prejudicial spill-over from evidence which will be admitted at trial against his codefendants but not against him.

■ The Court rejects Nelson's request pursuant to Fed.R.Crim.P. 8(b) for a severance. The Court is not persuaded by Nelson's attempt to bifurcate and characterize one overall scheme to defraud NGA customers into two separate schemes or transactions. The instant indictment properly alleges one overall scheme to defraud NGA investors. This scheme allegedly involved many acts and various types of fraudulent activity. All of the offenses charged in the indictment are part of "the same series of acts or transactions." Fed.R.Crim.P. 8(b). Therefore, all of the offenses charged in the instant indictment were initially properly joined together in the same indictment.

■ With regard to Nelson's request for a severance pursuant to Fed.R.Crim.P. 14,

this argument is also meritless. Nelson is alleged to have been one of the two principals of NGA. He is alleged to have played a pervasive role in the attempt to defraud NGA investors. The Government intends to offer a substantial amount of evidence against Nelson in an attempt to show his dominant role in NGA's affairs. The Court, therefore, fails to see how Nelson could possibly suffer "prejudicial spill-over" from a joint trial. As with Harvey, should it appear to the Court that there is any danger of even slight prejudice to Nelson during the trial, this will be remedied by appropriate instructions to the jury during the charge.

Nelson also urges this Court to grant him a separate trial on Counts forty-one and forty-two. Nelson has moved for this severance pursuant to Fed.R.Crim.P. 8(a). The thrust of Nelson's argument is that it is improper to charge perjury in this indictment because the alleged acts of perjury were not a part of the scheme to defraud NGA investors which is charged in the indictment.

■ The Court begins by noting that Fed.R.Crim.P. 8(b), and not 8(a), is the applicable rule. *United States v. Turbide,* 558 F.2d 1053, 1061 n. 7 (2d Cir.), *cert. denied,* 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977). Having noted this, the Court concludes that the two counts alleging perjury were not improperly joined in this indictment. The alleged perjurious acts involve testimony given by Nelson and Ghun in a civil proceeding. The civil proceeding involves a suit by former NGA investors to recover monies they claim were lost due to the fraudulent activities of NGA. The alleged perjurious testimony relates to the fraudulent activity of NGA, and thus deals with the very activity charged in the instant indictment. The alleged acts of perjury are, therefore, part of "the same series of acts or transactions" charged in the indictment. Fed.R.Crim.P. 8(b). And they are a part of the alleged overall scheme to defraud NGA investors. Accordingly, joinder of counts forty-one and forty-two in the instant indictment was

not improper, and the request for a severed trial on these two counts is DENIED. To summarize, Nelson's motions, pursuant to Rules 8(b) and 14 of the Federal Rules of Criminal Procedure, for a severed trial from that of his codefendants, and, pursuant to Fed.R.Crim.P. 8(a), and for a severed trial on Counts forty-one and forty-two are DENIED.

To the extent that Ghun joins in the motions of Harvey and Nelson for severances, these motions, as they may apply to Ghun, are also DENIED.

*Dismissal of Counts Thirty-seven through Forty.*

Both Nelson and Ghun have moved to dismiss Counts thirty-seven through forty. They argue that these counts fail to allege essential elements of the offenses charged, that the counts are duplicitous, and that the conduct described in these counts doesn't conform to the crime charged. The apparent confusion over these four counts seems to have resulted from a typographical error and from a misreading of the violation charged.

 The indictment, in Counts thirty-seven through forty, charges violations of 7 U.S.C. §§ 6*o* and 13(a). The defendants misread the indictment by claiming that a violation of 7 U.S.C. § 60 is charged. In addition, the Government has represented that there is a typographical error contained in the indictment, in that the indictment charges a violation of 7 U.S.C. § 13(a) when it should charge a violation of 7 U.S.C. § 13(b).

The Government has urged the Court to make the ministerial change so that the counts properly denominate 7 U.S.C. § 13(b). A ministerial change of this nature can be made by the Court as the defendants would suffer no prejudice from such a change. *United States v. McGrath,* 558 F.2d 1102, 1105 (2d Cir.1977), *cert. denied,* 434 U.S. 1064, 98 S.Ct. 1239, 55 L.Ed.2d 765 (1978); *United States v. Cirami,* 510 F.2d 69, 72–74 (2d Cir.), *cert. denied,* 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 451 (1975). The Court, therefore, will make the requested change and hereby directs that Counts thirty-seven through forty should now be read to state a violation of 7 U.S.C. §§ 6*o* and 13(b).

 This correction, and a correction of the defendants' error in reading 7 U.S.C. § 6*o* as 7 U.S.C. § 60, disposes of all of the arguments the defendants raise to dismiss these counts. Accordingly, the motions to dismiss Counts thirty-seven through forty are DENIED.

*Discovery Requests*

The defendants have moved to compel pre-trial disclosure of a wide array and vast amount of information which they contend they are entitled to and which they also contend the Government possesses and has a duty to disclose. At the outset, it is useful to note what the Government has produced and what it intends to produce.

The Government has thus far provided the defendants with the following pre-trial discovery:

1) The Government has granted the defendants access, for copying and inspection, of virtually its entire documentary evidence file.

2) The Government has provided the defendants with copies of the defendants' statements that were given to law enforcement officials and copies of defendants' prior criminal records, if any.

3) The Government has supplied copies of all tape-recorded conversations involved in this case and has agreed to provide transcripts of these tapes and summaries of NGA's customer accounts.

In addition to the foregoing, the Government has also agreed to do the following:

1) To produce all "3500" material for a witness no later than the night before the witness testifies.

2) With respect to *Brady* material:

(A) To produce all "3500" material for impeachment of a witness by no later than the night before that witness's direct testimony.

(B) To produce the criminal records of all Government witnesses no later than the night before that particular witness begins his or her direct testimony.

(C) All promises and inducements to testify and all benefits conferred upon a witness will be disclosed by that witness in his or her direct testimony. If the witness fails to do this the Government will promptly advise defense counsel of any omitted facts.

(D) All other *Brady* material which the government is in possession of or which the Government knows to exist will be turned over to the defendants no later than two weeks prior to the commencement of the trial.

3) The Government will produce for the defendants a copy of its exhibit list one week prior to trial.

4) If the Government decides to offer any evidence pursuant to Rule 803(24) or 804(b)(5) of the Federal Rules of Evidence, it will give the defendants prompt notice of this.

5) The Government will provide ample pre-trial notice of its intention to present "similar act" evidence.

6) The Government will disclose the names of any witnesses who will testify about "similar acts."

7) The Government has already provided the defendants with a list of the names of all persons the Government believes to be "co-schemers."

In short, the Government has provided the defendants with open file discovery and has complied with the discovery obligations it has in a criminal case.

Of course, pre-trial discovery in criminal cases is strictly circumscribed. Rule 16 of the Federal Rules of Criminal Procedure defines the general permissible limits of pre-trial discovery in criminal cases. With this in mind, a discussion of the extensive discovery requests interposed by the defendants follows.

█ Harvey has moved to compel the Government to provide him with a list of Government witnesses for trial. Ghun has joined in this request and has also requested the pre-trial disclosure of a wide array of information pertaining to these witnesses. However, the defendants here have "presented the court with no specific evidence of the existence, much less the extent, of [their] need for disclosure to counter the government's evidence of the need for concealment." *United States v. Cannone,* 528 F.2d 296, 302 (2d Cir.1975). No "specific evidence of the need for disclosure" of a witness list has been provided to the Court. *Id.* And the Government's concerns regarding pre-trial disclosure of witness' identities are unrefuted by the defendants. *See* Maas Affidavit, *supra,* at ¶¶ 49–56. Accordingly, the defendants' requests for pre-trial disclosure of a witness list are hereby DENIED.

█ The defendants have also requested that they be provided with any statements made by any of the alleged coschemers. However, "Rule 16(a) simply does not encompass these statements, nor does the Jencks Act permit their disclosure over the objection of the government." *United States v. Percevault,* 490 F.2d 126, 131 (2d Cir.1974). Accordingly, the defendants' requests for the information are DENIED. Similarly, their request for the disclosure of the coschemers' addresses is also DENIED.

█ The defendants also request that the Government produce all of the statements of potential Government witnesses in which any of the defendants' statements are repeated. This request by the defendants is merely an attempt to obtain by the back door what they are not entitled to obtain by the front door. "[B]ecause the statement [of a defendant] was memorialized originally only in the recollection of a witness, it is not discoverable." *United States v. Viserto,* 596 F.2d 531, 538 (2d Cir.), *cert. denied,* 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979) (citation omitted). Neither Fed.R.Crim.P. 16(a) nor the Jencks Act, 18 U.S.C. § 3500, provides for the pre-trial disclosure of witnesses' statements. Yet this is precisely what the defendants seek to obtain. Fed.

R.Crim.P. 16(a) simply does not extend this far. Accordingly, defendants' request for these statements is also hereby DENIED. Similarly, Fed.R.Crim.P. 16(a) does not authorize the pre-trial disclosure of statements the Government intends to offer at trial pursuant to Fed.R.Evid. 801(d)(2)(C), (D), and (E). The request for this information is also DENIED.

The defendants' remaining discovery requests do not merit specific discussion. The Court has considered each of them and concluded that the Government has either agreed to provide the requested material, or the defendants are not entitled to the pre-trial disclosure of such information. Accordingly, these requests, except to the extent the Government already has agreed to provide such information, are DENIED.

### Bill of Particulars

 Ghun and Harvey have requested this Court to order the Government to provide them with an extensive Bill of Particulars. Nelson presumably joins in this request. For the following reasons these requests are DENIED.[3]

The function of a bill of particulars is *not* to require the Government "to disclose its evidence in advance of trial." *United States v. Gottlieb*, 493 F.2d 987, 994 (2d Cir.1974) (emphasis added). Rather, "... the principal function of a bill of particulars is to apprise a defendant of the essential *facts* of the crime for which he has been indicted, ..." *United States v. Salazar*, 485 F.2d 1272, 1278 (2d Cir.1973), *cert. denied*, 415 U.S. 985, 94 S.Ct. 1579, 39 L.Ed.2d 882 (1974) (emphasis added).

In the instant case the indictment provides great detail and is highly specific with regard to the alleged offenses and the alleged overall scheme to defraud NGA investors. Moreover, the defendants have already received extensive pre-trial discovery, including essentially "open file" discovery, from the Government. In view

of this, they are neither entitled to nor do they need, in order to be adequately apprised of the charges, the information sought in their very broad proposed bills of particulars. Accordingly, the defendants' requests for bills of particulars are DENIED.

### Conclusion

The foregoing discussion disposes of all of the motions filed by the defendants. This case shall proceed to trial as scheduled on May 6, 1985 at 10:00 a.m.

SO ORDERED.

---

**3.** The Court notes that Ghun has apparently failed to comply with Rule 3(d) of the Local Criminal Rules for the Southern District of New York. The Court does not rely on this noncompliance as a basis for denying any of Ghun's discovery motions. The Court does not condone this conduct, however, and strongly urges that in the future this rule be strictly adhered to.