UNITED STATES of America,

v.

Raffi NAKASHIAN, a/k/a "Ralfi," Defendant.

No. 85 Cr. 997 (LLS).

United States District Court, S.D. New York.

May 28, 1986.

Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., New York City, for U.S. of America; Jess T. Fardella, Asst. U.S. Atty., of counsel.

Wender, Murase & White, New York City, for defendant; Kenneth V. Handal, of counsel.

STANTON, District Judge.

Defendant Raffi Nakashian was indicted in five counts on October 30, 1985 for conspiring to import hashish in violation of 21 U.S.C. § 963, to distribute hashish in violation of 21 U.S.C. § 846, and to defraud the United States by making false statements regarding amounts of currency being brought into the country in violation of 18 U.S.C. § 371; and for making false and fraudulent statements to government agents regarding his participation in the alleged conspiracies in violation of 18 U.S.C. § 1001. A superseding indictment was filed on February 26, 1986, dropping the counts for making false statements to government agents and adding four counts of perjury in violation of 18 U.S.C. § 1623. Defendant moves pursuant to (a) Fed.R. Crim.P. 12 for an order dismissing the indictment for prosecutorial misconduct or, in the alternative, dismissing the conspiracy counts for multiplicity; (b) Fed.R.Crim.P. 6(e)(3)(C)(ii) for an order directing the government to produce for defendant's inspection the minutes of the grand jury proceedings containing the colloquies between the prosecutor and the grand jury; (c) Fed. R.Crim.P. 16 and *Brady v. Maryland,* 373

U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for discovery; and (d) Fed.R.Crim.P. 7(f) for a bill of particulars.

Motion to Dismiss the Indictment

A. Prosecutorial Misconduct

The parties agree on the basic sequence of events which preceded the defendant's indictment. On July 3, 1985 two government agents personally served on the defendant at his auto parts store a grand jury subpoena *duces tecum* with a return date of July 9, 1985. (Aff. of Raffi Nakashian, ¶¶ 5, 6; Aff. of Jess T. Fardella, ¶ 4.) Appended to the subpoena was an "advice of rights," which informed the defendant that he could refuse to answer any question which might incriminate him, that anything he did say might be used against him, and that his attorney, if any, could remain outside the grand jury room for consultation during his examination. (Fardella Aff., Exh. A.) After receiving the subpoena the defendant agreed to be driven by the agents to the office of Assistant United States Attorney Jess T. Fardella (the "AUSA") to discuss the investigation. (Nakashian Aff., ¶ 7; Fardella Aff., ¶ 4.) At his office the AUSA explained that the government was investigating currency transactions at the Republic National Bank and their possible connection with illegal drug dealing. (Nakashian Aff., ¶ 8; Fardella Aff., ¶ 5.)

On July 9, 1985 the defendant appeared before the grand jury pursuant to the subpoena. (Nakashian Aff., ¶¶ 11, 12; Fardella Aff., ¶ 7.) The AUSA outlined to him the nature of the proceedings and the subject matter of the government's investigation, and informed the defendant that he was a subject of the investigation and could be named as a defendant. (Tr. I at 2–3.)[1] The defendant was informed of his Fifth Amendment rights and was warned that if he lied under oath to the grand jury he could be charged with a crime. (Tr. I at 3–6.) At the end of the first session the defendant was directed to return two days later to continue his examination. (Tr. I at 56.)

The defendant appeared before the grand jury again on July 11, 1985. During that session the AUSA did not repeat his previous warning that the defendant was a subject of the investigation, nor did he again inform the defendant of his Fifth Amendment rights. The defendant was reminded that if he lied to the grand jury he could be prosecuted for perjury. (Tr. II at 41–43.)

On August 22, 1985 the government requested that the defendant meet with the AUSA. He agreed and was driven to the AUSA's office by a government agent. (Nakashian Aff., ¶ 18; Fardella Aff., ¶ 10.) They discussed the government investigation, and sometime during their meeting the AUSA urged the defendant to retain an attorney. (Nakashian Aff., ¶ 20; Fardella Aff., ¶ 10.)

On October 16, 1985 a government agent delivered a letter from the AUSA to the defendant which invited him, but did not require him, to appear before a grand jury on October 21, 1985. Subsequently the AUSA agreed to have the defendant appear on October 23, 1985. (Nakashian Aff., ¶¶ 22, 23 and Exh. A; Fardella Aff., ¶ 11.)

The defendant appeared before a second grand jury on October 23, 1985 after a conversation with the AUSA in his office. (Nakashian Aff., ¶ 26; Fardella Aff., ¶ 13.) During the grand jury examination the AUSA again described the subject matter of the government investigation (Tr. III at 2–4), and the defendant was again informed of his Fifth Amendment rights (Tr. III at 6–9, 38, 77–79, 117; Tr. IV at 3), and told that if he lied under oath he was subject to prosecution for perjury (Tr. III at 8–9; Tr. IV at 82–84). In addition the defendant was forcefully warned at the beginning of the morning session that he was a target of the government investigation and would likely be indicted by the grand jury. (Tr.

1. References to the transcripts of defendant's grand jury testimony are designated as to session by roman numeral: July 9, 1985 (I); July 11, 1985 (II); October 23, 1985, morning session (III); and October 23, 1985, afternoon session (IV); and by page number, preceded by "Tr."

III at 4–6.) The defendant's original indictment was handed down on October 30, 1985.

The defendant argues that prosecutorial misconduct which led to his indictment requires its dismissal. The misconduct alleged includes: (1) the AUSA's failure properly to inform the defendant of his Fifth Amendment rights, of his right to refuse to attend or answer any questions before the grand jury when he was attending voluntarily, and of his status as a target of the government investigation, especially in view of the defendant's difficulty with the English language; (2) efforts by the AUSA and government agents to persuade the defendant that he was merely helping with the investigation and that he was not in danger of prosecution; (3) badgering of the defendant during his grand jury examination by the AUSA; and (4) improper use of the defendant's appearance before a second grand jury for no other purpose but the government's discovery.

█ The Fifth Amendment privilege against compelled self-incrimination protects grand jury witnesses from being forced to give testimony which later may be used against them in a criminal proceeding. *Lefkowitz v. Cunningham*, 431 U.S. 801, 804–05, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977). There is no constitutional requirement, however, that a grand jury witness be specifically informed of his Fifth Amendment rights before his examination in order that his testimony may be used to support a criminal indictment. *United States v. Washington*, 431 U.S. 181, 187–88, 97 S.Ct. 1814, 1818–19, 52 L.Ed.2d 238 (1977); *Moynahan v. Manson*, 419 F.Supp. 1139, 1150 (D.Conn.1976), *aff'd mem.*, 559 F.2d 1204 (2d Cir.), *cert. denied*, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977). Nor is there any constitutional requirement that a target of an investigation be informed of his status before he testifies before a grand jury. *Washington*, 431

U.S. at 188–89, 97 S.Ct. at 1819; *United States v. D'Auria*, 672 F.2d 1085, 1093 (2d Cir.1982); *United States v. Horowitz*, 452 F.Supp. 415, 420 (S.D.N.Y.1978).

It is true, as defendant points out, that in *United States v. Jacobs*, 547 F.2d 772 (2d Cir.1976), *cert. granted*, 431 U.S. 937, 97 S.Ct. 2647, 53 L.Ed.2d 254 (1977), *cert. dismissed as improvidently granted*, 436 U.S. 31, 98 S.Ct. 1873, 56 L.Ed.2d 53 (1978), the court affirmed the suppression of a defendant's grand jury testimony because she had not received a target warning before testifying. However, in that case the Second Circuit merely held, in the exercise of its supervisory power, that in the interest of uniform justice the Organized Crime Strike Force, when investigating crimes within the circuit, should be obliged to follow the long-standing procedure of the United States Attorneys in the circuit pursuant to which a target of an investigation was customarily informed of that status before testifying before a grand jury. The court's ruling was not grounded on any constitutional right to a target warning. *Jacobs*, 547 F.2d at 775–76. Indeed, the court sought only to enforce a consistent procedure and noted that a uniform practice of omitting target warnings would be equally acceptable. *Id.* at 778; *see also United States v. DePalma*, 461 F.Supp. 778, 792–93 (S.D.N.Y.1978).

█ The defendant further argues that the AUSA's failure to warn the defendant before his July, 1985 grand jury appearance that he was a target of the investigation justifies dismissal of the indictment, since the United States Attorneys' Manual ("USAM") requires such a warning.[2] *See* USAM, § 9–11.260 at 38. Even assuming that the defendant qualified as a target of the grand jury's investigation in July, the provisions of the USAM afford a party no substantive rights, and their violation does not support the dismissal of an indictment. *United States v. Catino*, 735 F.2d 718, 725 (2d Cir.), *cert. denied*, —— U.S. ——, 105

---

**2.** The USAM defines a "target" as "a person as to whom the prosecutor or the grand jury has substantial evidence linking him/her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant." USAM, § 9–11.260 at 38.

S.Ct. 180, 83 L.Ed.2d 114 (1984); *United States v. Loften,* 518 F.Supp. 839, 857 (S.D. N.Y.1981).

 In any event, the defendant was repeatedly informed of the subject matter and nature of the grand jury's proceedings, his Fifth Amendment rights, his right to refuse to attend or answer questions when he was before the grand jury voluntarily, and his status as a subject,[3] and later as a target, of the investigation. Considering that the defendant has been living in the United States for the last twelve years (Tr. I at 10; Tr. II at 51), that he studied biology and economics for four years at an American college (Tr. I at 10–11; Tr. III at 31), that he worked at three auto parts stores in this country in the space of three years and has operated his own such store here for the last two years (Tr. I at 9, Tr. III at 35–36), that he fielded almost eight hours of questioning by the AUSA before the grand jury with little or no indication that he failed to understand the proceedings or questions, and that the defendant agreed that he speaks English perfectly well (Tr. II at 28; Tr. III at 2, 13), the defendant's claim that he did not understand the AUSA's repeated warnings and explanations during his examination is not credible. *Cf. United States v. Satterfield,* 644 F.2d 1092, 1097 (5th Cir.1981) (finding comprehension of *Miranda* warnings and intelligent waiver of Fifth Amendment rights where defendant had an 11th grade education and operated his own business); *United States v. Yong Bing-Gong,* 594 F.Supp. 248, 257 (N.D.N.Y.1984) (same, where Asian defendant had no difficulty responding to police questioning and did not ask for an interpreter).

 The defendant's claim that the prosecution improperly misled him during the investigation fails on similar grounds. The defendant states that the government agents and the AUSA were always extremely pleasant to him and indicated that he was "on the same side" as the govern-

ment, thus giving him the impression that he was helping them by agreeing to testify and that he was in no danger of being indicted. (Nakashian Aff., ¶¶ 6–9, 14, 16, 17, 20–22, 31.) The AUSA disputes many of the defendant's descriptions of the events which led to his indictment. (Fardella Aff., ¶¶ 4–6, 10–13.) However, even accepting defendant's allegations as true, neither the AUSA nor the government agents involved engaged in misconduct. In essence the defendant's claim is that he was not properly informed of his status as a putative defendant, and thus he was lulled into a false sense of security. As noted above, the defendant had no right to a target warning during the investigation. Further, it can hardly be said that the agents' alleged acts of courtesy and equivocal expressions of reassurance to the defendant amount to the sort of "truly extreme" official misconduct which justifies the dismissal of an indictment. *See United States v. Thibadeau,* 671 F.2d 75, 78 (2d Cir.1982); *United States v. Broward,* 594 F.2d 345, 351 (2d Cir.), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979); *cf. United States v. Hogan,* 712 F.2d 757, 762 (2d Cir.1983) (dismissing indictment because of government's "flagrant and unconscionable" misconduct before grand jury).

 The defendant complains that the AUSA repeatedly asked him about a man named Sami Skaff and generally intimidated him before the grand jury. There is no indication in the record that the defendant was intimidated by the AUSA's examination. (*See* Tr. IV at 36–37 ("Could you please just answer the question."); Tr. IV at 67 ("Mr. Nakashian, come on. Isn't it a fact that …?").) The AUSA asked the defendant about Mr. Skaff only four times during the almost eight hours of his testimony. (Tr. II at 30; Tr. III at 63; Tr. IV at 12–16, 36–37.) "An Indictment will be dismissed because of the actions of the prosecution only if there is a clear showing

**3.** The USAM defines a "subject" as "a person whose conduct is within the scope of the grand jury's investigation." USAM, § 9–11.260 at 38.

of serious misconduct." *United States v. Greater Syracuse Board of Realtors, Inc.*, 449 F.Supp. 887, 900 (N.D.N.Y.1978); *see also United States v. Sugar*, 606 F.Supp. 1134, 1146 (S.D.N.Y.1985). The defendant has failed to show that any part of the AUSA's presentation before the grand jury was intended "to inflame or otherwise improperly influence the jurors against" the defendant. *United States v. DiGrazia*, 213 F.Supp. 232, 235 (N.D.Ill.1963).

■ Finally, defendant argues that it was improper for the government to invite him to appear before a second grand jury because that appearance was being used by the AUSA for discovery. That argument is refuted by *United States v. Lovasco*, 431 U.S. 783, 790–97, 97 S.Ct. 2044, 2048–52, 52 L.Ed.2d 752 (1977), in which the Court held that there is no constitutional requirement that a defendant be indicted promptly upon the government's obtaining sufficient evidence to do so, when its investigation of the entire criminal transaction is not complete. *See also United States v. Snyder*, 668 F.2d 686, 689–90 (2d Cir.), *cert. denied*, 458 U.S. 1111, 102 S.Ct. 3494, 73 L.Ed.2d 1373 (1982); *United States v. Gregory*, 611 F.Supp. 1033, 1041 (S.D.N.Y. 1985).

The defendant has failed to show prosecutorial misconduct with respect to his indictment, and his motion to dismiss the indictment on that ground is denied.

### B. Multiplicity of the Conspiracy Counts

The defendant moves for dismissal of the three conspiracy counts because of their asserted multiplicity. Count One of the indictment charges the defendant with conspiring to violate 21 U.S.C. §§ 812, 952(a) and 960(b)(2), which forbid the importation of narcotic drugs, in violation of the specific companion conspiracy statute, 21 U.S.C. § 963. Count Two charges the defendant with conspiring to violate 21 U.S.C. §§ 841(a)(1) and 841(b)(6), which forbid the manufacture, distribution or dispensing, or the possession with intent to manufacture, distribute or dispense, of controlled substances, in violation of the specific compan-

ion conspiracy statute, 21 U.S.C. § 846. Count Three charges the defendant with conspiring to violate 18 U.S.C. § 1001, which forbids the making of false or fraudulent statements to agencies of the United States, in violation of the general conspiracy statute, 18 U.S.C. § 371. Section 371 provides, in relevant part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

■ An indictment is multiplicitous when a single offense is charged in more than one count. *United States v. Israelski*, 597 F.2d 22, 24 (2d Cir.1979). The multiplicity doctrine is based upon the double jeopardy clause of the Fifth Amendment which "protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The vice in multiplicity of charges is twofold: "it may lead to multiple sentences for the same offense and may improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes." *United States v. Reed*, 639 F.2d 896, 904 (2d Cir.1981); *see also United States v. Frederick*, 551 F.Supp. 1035, 1042 (D.Kan.1982). The danger to a defendant of receiving multiple punishments for a single offense because of a multiplicitous indictment may be avoided by post-conviction motion or on appeal. *Reed*, 639 F.2d at 904 n. 6; *see, e.g., United States v. Peacock*, 761 F.2d 1313, 1319–1320 (9th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 139, 88 L.Ed.2d 114 (1985); *United States v. Bradsby*, 628 F.2d 901, 905 (5th Cir. 1980); *United States v. Corral*, 578 F.2d 570, 572 (5th Cir.1978); *United States v. Clevenger*, 458 F.Supp. 354, 359 (E.D.Tenn. 1978). However, to avoid the potential prejudice created by a prolix indictment, the multiplicity issue should be addressed

before trial. Upon a finding that the indictment is multiplicitous, the appropriate remedy is to require the prosecution to elect among the multiplicitous counts, with all but the one elected dismissed. *Reed,* 639 F.2d at 904 n. 6.; *see United States v. Austin,* 99 F.R.D. 292, 298 (W.D.Mich. 1983); *United States v. Pray,* 452 F.Supp. 788, 800 (M.D.Pa.1978); *cf. United States v. Kearney,* 451 F.Supp. 33, 38 (S.D.N.Y. 1978) (requiring election of one charge from duplicitous count).

In this case, as the defendant concedes, there is no multiplicity issue raised as to the first two counts charged under the specific drug conspiracy statutes. In *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), the Court held that there was no double jeopardy violation in imposing consecutive sentences on a defendant convicted of conspiracy to import drugs under 21 U.S.C. § 963, and of conspiracy to distribute drugs under 21 U.S.C. § 846. *Id.* at 339, 101 S.Ct. at 1142. Defendant claims it is the addition of Count Three under the general conspiracy statute which makes the indictment multiplicitous.

Multiplicity is determined by a three-step inquiry: (1) whether each statutory provision allegedly violated unambiguously authorizes punishment for a violation of its terms; (2) whether the offenses charged are sufficiently distinguishable from one another to permit a reasonable inference that Congress intended to authorize multiple punishments; and (3) if the first two questions are answered affirmatively, whether the legislative history reveals a Congressional intention against multiple punishments; in the absence of such an expressed intention, the court is to assume that Congress intended to authorize multiple punishments under the statutes charged. *Albernaz,* 450 U.S. at 336–42, 101 S.Ct. at 1140–44; *United States v. Marrale,* 695 F.2d 658, 662 (2d Cir.1982),

cert. *denied,* 460 U.S. 1041, 103 S.Ct. 1434, 1435, 75 L.Ed.2d 793 (1983).

Each conspiracy statute charged against the defendant unambiguously authorizes punishment for its violation. The two drug conspiracy statutes adopt the punishments provided for the commission of the relevant underlying substantive offenses. 21 U.S.C. § 846; 21 U.S.C. § 963. The general conspiracy statute itself authorizes punishment for felony conspiracies, and adopts the punishment provided for the underlying offense for misdemeanor conspiracies, 18 U.S.C. § 371.[4]

Next it must be considered whether the offenses charged are sufficiently distinguishable that it may be reasonably inferred that Congress intended to permit punishment for each charge. *Marrale,* 695 F.2d at 662. Initially the test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), should be applied to the statutes charged:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id.* at 304, 52 S.Ct. at 182. *Blockburger* established a rule of statutory construction whose underlying assumption "is that Congress ordinarily does not intend to punish the same offense under two different statutes." *Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980).

The essence of a conspiracy is the agreement between two or more persons to commit a crime. *United States v. Cole,* 755 F.2d 748, 755 (11th Cir.1985); *United States v. Martino,* 664 F.2d 860, 876 (2d Cir.1981); *cert. denied,* 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982); *United States v. Guillette,* 547

---

**4.** The maximum penalties provided by the applicable statutes for the three conspiracy offenses are: Count One, conspiracy to import hashish: 5 years, $15,000 fine, 21 U.S.C. § 960(b)(2); Count Two, conspiracy to distribute hashish: 15 years, $125,000 fine, 21 U.S.C. § 841(b)(6); Count Three, conspiracy to defraud and make false statements: 5 years, $10,000 fine, 18 U.S.C. § 371, subject to the alternative fine provisions of 18 U.S.C. § 3623.

F.2d 743, 751 (2d Cir.1976), *cert. denied,* 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977). The drug conspiracy statutes and the general conspiracy statute are similar to the extent that each requires proof of a defendant's intention to agree and of his intention to effectuate the illegal object of the conspiracy for his conviction. *United States v. United States Gypsum Co.,* 438 U.S. 422, 443 n. 20, 98 S.Ct. 2864, 2876 n. 20, 57 L.Ed.2d 854 (1978); *United States v. Kiriki,* 756 F.2d 1449, 1453 (9th Cir.1985). However, § 371 requires, in addition, proof of an overt act by a member of the conspiracy in furtherance of the agreement, *United States v. Plotke,* 725 F.2d 1303, 1307 (11th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 151, 83 L.Ed.2d 89 (1984), an element of proof not required under the drug conspiracy statutes. *United States v. Grammatikos,* 633 F.2d 1013, 1023 (2d Cir.1980). The drug conspiracy statutes are distinct, since they require proof of an agreement to violate the specific underlying drug offenses, while a conviction under the general conspiracy statute may be based on an agreement to violate any substantive federal criminal statute.

█ Since the pair of drug conspiracy statutes and the general conspiracy statute charged here each require proof of a fact which the other does not, it would appear under the *Blockburger* test that Count Three charges a separate offense from the first two counts of the indictment. However, in determining the merits of multiplicity claims arising in the context of multiple conspiracy counts, a court must look beyond the statutory elements to the specific allegations and objectives of each conspiracy alleged. The overlap of participants, overt acts, location, time and objectives are among the relevant factors in deciding whether an indictment charges one or more conspiracy offenses. *See United States v. Korfant,* 771 F.2d 660, 662 (2d Cir.1985); *United States v. Thomas,* 759 F.2d 659, 661–62 (8th Cir.1985); *United States v. Abbamonte,* 759 F.2d 1065, 1068 (2d Cir.1985). Particularly when an indictment charges violations of the general and a specific conspiracy statute, an analysis of the factual allegations and particular objectives of the conspiracies alleged is essential in determining the issue of multiplicity. *See United States v. Thomas,* 757 F.2d 1359, 1372–74 (2d Cir. 1985) (Newman, J., dissenting); *Corral,* 578 F.2d at 572 (impermissible to fragment single conspiracy into separate counts under general and specific conspiracy provisions); *United States v. Mori,* 444 F.2d 240, 242–45 (5th Cir.), *cert. denied,* 404 U.S. 913, 92 S.Ct. 238, 30 L.Ed.2d 187 (1971) (same).

The Court in *United States v. Barton,* 647 F.2d 224 (2d Cir.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981), looked beyond the elements of the conspiracy statutes to the specific charges in the indictment in ruling on the defendants' challenge to the imposition of cumulative sentences for their violations of the RICO conspiracy statute, 18 U.S.C. § 1962(d), and of the general conspiracy statute, 18 U.S.C. § 371. The defendants were charged under § 371 with agreeing to make and possess explosive devices and maliciously to damage buildings, and under § 1962(d) with agreeing to commit murder and arson. Because much of the evidence underlying the RICO conspiracy charge was unrelated to the § 371 conspiracy, and because the conspiracies had different objectives, the court was "convinced that § 371 and § 1962(d) created—and Counts One and Thirteen charged—two separate offenses." *Id.* at 237; *see also Thomas,* 757 F.2d 1359 (cumulative punishments for violation of RICO and drug conspiracy laws approved where each statute specifically proscribes, and each conspiratorial agreement sought to achieve, a different illegal objective).

█ Analysis of the allegations in this case compels the conclusion that the indictment is multiplicitous. The government concedes that the defendant's sole connection to the alleged conspiracies to import and distribute hashish was as a money courier. The defendant allegedly filed Reports of International Transportation of

Currency and Monetary Instruments with the United States Customs Service which overstated the amount of United States currency he was bringing into the country. That scheme allegedly allowed the defendant and others to disguise the fact that the cash they deposited at the Republic National Bank was, in part, proceeds from sales of hashish in the United States. (Fardella Aff., ¶ 2.) The same factual allegations underlie the conspiracy count under § 371. Except for two transactions unrelated to the defendant alleged in the two drug conspiracy counts, the overt acts in the three counts are identical.

 While it is true, as a general matter, that a defendant's single course of conduct properly may give rise to liability for distinct conspiracy offenses without violating the double jeopardy clause, *Albernaz*, 450 U.S. at 343, 101 S.Ct. at 1144, when specific and general conspiracy offenses are charged based upon a single course of conduct, and where the ultimate criminal object of the alleged conspiracies is the same, then the indictment is multiplicitous and one conspiracy count must be dismissed. *See Peacock*, 761 F.2d at 1319 (two conspiracy counts multiplicitous where parties, time period, location and overt acts alleged in each conspiracy count were identical); *United States v. Sindona*, 473 F.Supp. 764, 766 (S.D.N.Y.1979) (one conspiracy does not become many because it contemplates the violation of several criminal statutes).

The defendant moves for dismissal of all three conspiracy counts for multiplicity. Blanket dismissal is unnecessary, however, since elimination of either the two drug conspiracy counts or of the general conspiracy count would eliminate the multiplicity of the indictment. Therefore the government is directed to elect within ten days of the date of this order between the drug conspiracies charged in the first two counts and the general conspiracy charged in Count Three. To preclude the imposition of multiple penalties for a single offense, and to avoid the prejudice likely to result from the inclusion in the indictment of re-petitive conspiracy counts, the court will dismiss the count or counts not elected.

### Motion for Inspection of Grand Jury Minutes

Defendant moves pursuant to Fed.R. Crim.P. 6(e)(3)(C)(ii) for an order directing the government to permit him to inspect the grand jury minutes of the prosecutor's colloquies with the grand jury. The Supreme Court "has recognized the 'long-established policy that maintains the secrecy of grand jury proceedings in the federal courts.'" *Dennis v. United States*, 384 U.S. 855, 869, 86 S.Ct. 1840, 1848, 16 L.Ed.2d 973 (1966) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)). Rule 6(e)(3)(C)(ii) provides an exception to the general rule of secrecy "upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." However, disclosure of grand jury proceedings "is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and ... the burden of demonstrating this balance rests on the private party seeking disclosure." *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 223, 99 S.Ct. 1667, 1675, 60 L.Ed.2d 156 (1979). The standard is customarily described as requiring a strong showing of "particularized need" on the part of the movant. *See, e.g., United States v. Williams*, 644 F.2d 950, 952 (2d Cir.1981); *United States v. Moten*, 582 F.2d 654, 662 (2d Cir.1978); *Grumman Aerospace Corp. v. Titanium Metals Corp. of America*, 554 F.Supp. 771, 773–74 (E.D.N.Y.1982); *United States v. Abrams*, 539 F.Supp. 378, 388–89 (S.D.N.Y.1982); *Malizia v. United States Dept. of Justice*, 519 F.Supp. 338, 345–46 (S.D.N.Y. 1981).

 The defendant has failed to demonstrate a particularized need sufficient to justify disclosure of the grand jury minutes he seeks. He argues that because of the prosecutor's asserted misconduct in obtaining the indictment and the multiplicitous form of the indictment, it is likely that the

prosecutor improperly instructed the grand jury. (Defendant's Memorandum in Support of Motion to Dismiss at 54.) However, since the court has found no prosecutorial misconduct in the events leading to defendant's indictment, and since the defendant has been granted dismissal of the multiplicitous counts of the indictment, there are no grounds asserted by the defendant, save speculation and conjecture which are insufficient, to justify breaching the secrecy of the grand jury proceedings. *See United States v. Beatty*, 587 F.Supp. 1325, 1334–35 (E.D.N.Y.1984) (defendant's suspicion of irregular grand jury proceedings does not justify disclosure).

### Discovery

The defendant moves pursuant to Fed.R. Crim.P. 16 and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for discovery of:

(a) any statements in the government's possession made by the defendant;

(b) any statements in the government's possession made by co-conspirators;

(c) the identities of the government's prospective witnesses and any of their statements in the government's possession;

(d) all grand jury records and testimony;

(e) the identities of any persons who acted as undercover agents or informants in the case, and of any persons known by the government to possess information relevant to the case;

(f) all documents or tangible items, intended by the prosecution to be used as evidence, which were obtained from or belong to the defendant, or which are material to the preparation of the defense, and the results or reports of any scientific tests or experiments, and physical or mental examinations relevant to the case;

(g) memoranda, logs or notes related to wiretapping, eavesdropping or other methods of surveillance used in the investigation of the case;

(h) *Brady* material, including information regarding agreements made between the government and its prospective witnesses; information bearing on the motivation, credibility, mental or physical disability, drug or alcohol dependence, prior criminal conduct or charges, and false statements of prospective government witnesses; and the "rap" sheets of potential government witnesses; and

(i) "similar act" or "other crime" evidence against the defendant in advance of trial.

### A. Defendant's Statements

The government has already produced to defendant copies of his testimony before the grand jury and of handwritten government agents' notes reflecting defendant's statements to them. (Handal Aff., Exh. D at 1.) The defendant seeks further disclosure of his written statements and records of his oral statements in the government's possession.

■ Under Fed.R.Crim.P. 16(a)(1)(A) a defendant is entitled to production of "any relevant written or recorded statements made by the defendant," and of the substance of defendant's oral statements which the government intends to offer into evidence and which were made "in response to interrogation by any person then known to the defendant to be a government agent." Defendant is not entitled to discovery of his oral statements to persons other than those he knew at the time to be government agents. *See e.g., United States v. Jackson*, 757 F.2d 1486, 1491 (4th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 407, 88 L.Ed.2d 358 (1985) (Rule 16(a)(1)(A) does not require disclosure of statements by others to government which recount defendant's statements); *United States v. McClure*, 734 F.2d 484, 493 (10th Cir.1984) (defendant not entitled to substance of oral statement made to one who was not known by defendant to be a government agent); *United States v. Viserto*, 596 F.2d 531, 538 (2d Cir.), *cert. denied,* 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979) (notes of unrecorded conversation overheard by government agent, whose presence was unknown to defendant, are not discoverable

under Rule 16(a)(1)(A)); *United States v. Nelson,* 606 F.Supp. 1378, 1389 (S.D.N.Y. 1985) (Rule 16(a)(1)(A) does not apply to statements of government witnesses which repeat the defendant's statements); *United States v. Heldon,* 479 F.Supp. 316, 322–23 (E.D.Pa.1979) (Rule 16(a)(1)(A) does not apply to all defendant's statements in government's possession, regardless of to whom they were made). To the extent that the government has not met its obligation under Rule 16(a)(1)(A) to produce copies of the defendant's written and oral statements, it is directed to do so forthwith.

### B. Co-Conspirators' Statements

■ The defendant seeks pre-trial inspection of records, recordings or copies of statements made by his alleged co-conspirators. Generally such statements are not discoverable, except to the extent that they fall within the requirements of *Brady* and the *Jencks* act, 18 U.S.C. § 3500. *United States v. Percevault,* 490 F.2d 126, 131 (2d Cir.1974); *Nelson,* 606 F.Supp. at 1389; *United States v. Wilson,* 565 F.Supp. 1416, 1438 (S.D.N.Y.1983); *Greater Syracuse Board,* 438 F.Supp. 376 at 383 (N.D.N.Y. 1977).

■ An exception to the general rule has been recognized, however, for statements made during the course of and in furtherance of a conspiracy, if the co-conspirator whose statement is sought is not a prospective government witness and the disclosure of his statement would not unnecessarily reveal sensitive information. *See Jackson,* 757 F.2d at 1491–92; *United States v. Payden,* 613 F.Supp. 800, 820 (S.D.N.Y.1985); *United States v. Konefal,* 566 F.Supp. 698, 706–07 (N.D.N.Y.1983); *United States v. Thevis,* 84 F.R.D. 47, 56–57 (N.D.Ga.1979); *United States v. Turkish,* 458 F.Supp. 874, 882 (S.D.N.Y.1978), *aff'd,* 623 F.2d 769 (2d Cir.1980); *United States v. Agnello,* 367 F.Supp. 444, 448–49 (E.D.N.Y.1973). The theory underlying the exception begins with the fact that Fed.R. Evid. 801(d)(2)(E) makes admissible the statements of a defendant's co-conspirator made during the course and in furtherance

of the conspiracy. *Thevis,* 84 F.R.D. at 56; *Agnello,* 367 F.Supp. at 448. Since that rule permits the government to introduce such statements of a co-conspirator against the defendant as if they were his own, courts have reasoned that they should be discoverable as the defendant's statements under Fed.R.Crim.P. 16(a)(1)(A), subject to Fed.R.Crim.P. 16(a)(2), which exempts from pre-trial discovery statements made by prospective government witnesses. *See* 2 C. Wright, *Federal Practice and Procedure* § 253 at 50 (2d ed.1982); *contra United States v. Thomas,* 609 F.Supp. 1048 (E.D. N.C.1985); *Nelson,* 606 F.Supp. at 1389–90.

Discovery of a co-conspirator's statement when he will not be called to testify in person for the prosecution avoids unfair surprise to the defendant, since it affords the defendant an opportunity to investigate the origin and truthfulness of the statement before it is offered against him at a trial in which he will be unable to cross-examine the co-conspirator himself. *Jackson,* 757 F.2d at 1491. In addition such disclosure does not implicate the policies behind 18 U.S.C. § 3500, which precludes disclosure of government witnesses' statements until after their trial testimony to avoid intimidation of witnesses and efforts to suborn perjury, *Percevault,* 490 F.2d at 131, since the witnesses' statements are memorialized. *Jackson,* 757 F.2d at 1491–92.

Here the government has made no showing that disclosure of statements made by co-conspirators whom it does not intend to call as witnesses, if any, will unnecessarily reveal sensitive information. Therefore the government is directed to provide defendant with copies of any such statements it will offer, made during the course of and in furtherance of the conspiracy by those co-conspirators whom the government does not intend to call as witnesses, but those statements may be redacted to exclude references irrelevant to the indictment in this case. *See Konefal,* 566 F.Supp. at 707; *cf. United States v. Shoher,* 555 F.Supp. 346, 353 (S.D.N.Y.1983) (disclosure of non-witnesses' written statements under Rule

16(a)(1)(C) as documents "intended for use by the government as evidence in chief at the trial" is limited to material information).

## C. Government Witnesses' Identities and Statements

In the absence of something more than "an abstract, conclusory claim that [disclosure of prospective government witnesses' identities is] necessary to [the defendant's] proper preparation for trial," he is not entitled to that disclosure. *United States v. Cannone*, 528 F.2d 296, 301–02 (2d Cir. 1975); *see also Nelson*, 606 F.Supp. at 1389; *United States v. Ramirez*, 602 F.Supp. 783, 794 (S.D.N.Y.1985); *Konefal*, 566 F.Supp. at 705; H.R.Conf.Rep.No. 414, 94th Conf., 1st Sess. 12, *reprinted in* 1975 U.S.Code Cong. & Ad.News 674, 713, 716 ("Discouragement of witnesses and improper contacts directed at influencing their testimony, were deemed paramount concerns in the formation of this policy [not to require the disclosure of witness identities]."). Since the defendant has made no particular showing of need for disclosure of the identities of the government's witnesses, his motion for an order compelling that disclosure is denied.

■ The defendant's motion for production of statements of the government's prospective witnesses is also denied. Not only does Fed.R.Crim.P. 16(a)(2) specifically exempt such statements from the scope of pre-trial discovery, but in addition, under 18 U.S.C. § 3500, a district court is without jurisdiction to order the disclosure of statements of such witnesses before their direct testimony at trial. *United States v. Sebastian*, 497 F.2d 1267 (2d Cir.1974); *Percevault*, 490 F.2d at 132; *United States v. Persico*, 621 F.Supp. 842, 869 (S.D.N.Y. 1985); *Wilson*, 565 F.Supp. at 1438; *Greater Syracuse Board*, 438 F.Supp. at 383.

## D. Grand Jury Records and Testimony

■ As with his motion pursuant to Rule 6 for production of the prosecutor's colloquies with the grand jury, defendant is entitled to the grand jury log and witness testimony only upon a strong showing of "particularized need." *Williams*, 644 F.2d

at 950; *Beatty*, 587 F.Supp. at 1334; *Abrams*, 539 F.Supp. at 388–89. The defendant provides no support for his request for the grand jury materials, and his motion for their production is denied.

## E. Identities of Non-Witnesses

■ The defendant seeks production of the names of those who acted as informants or undercover agents in the case, and of any other persons who have, to the government's knowledge, information relevant to the case. As the government recognizes (Government's Memorandum at 67), *Brady* forbids the suppression of exculpatory evidence by the prosecution. *Id.*, 373 U.S. at 87, 83 S.Ct. at 1196. *Brady* does not go so far, however, as to require that a defendant be supplied "with all the evidence in the Government's possession which might conceivably assist the preparation of his defense...." *United States v. LeRoy*, 687 F.2d 610, 619 (2d Cir.1982), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983); *see also United States v. Bagley*, — U.S. —, 105 S.Ct. 3375, 3380 n. 7, 87 L.Ed.2d 481 (1985) (*Brady* did not create a broad, constitutionally required right of discovery); *United States v. Beasley*, 576 F.2d 626, 630 (5th Cir.1978), *cert. denied*, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979) ("*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation."); *United States v. Shakur*, 543 F.Supp. 1059, 1061 (S.D.N.Y.1982) ("*Brady* does not entitle a defendant to a general right of pretrial discovery."). The defendant's request for the identities of the government's agents, informants, and persons with relevant information is the sort of "rummaging of the prosecution's files" unauthorized by *Brady*, and his motion for production of that information is denied. *Shakur*, 543 F.Supp. at 1061.

## F. Documents, Tangible Items and Test Reports

Defendant moves pursuant to Fed.R. Crim.P. 16(a)(1)(C) and (D) for an order compelling production of various documents, objects and reports. Inasmuch as the prosecution has agreed to produce for

defendant's inspection all the items in its possession which are subject to discovery under Rules 16(a)(1)(C) and (D) (Handal Aff., Exh. A at 3, Exh. D at 6–7, Exh. E. at 1–3; Government's Memorandum at 63–65), defendant's motion is granted, and the government is directed to produce or permit the defendant to inspect and copy such materials forthwith.

### G. Surveillance Materials

 Defendant's motion for production of memoranda, logs or notes related to wiretapping, eavesdropping or other surveillance by the government is denied. Such internal government documents developed by the prosecution are specifically exempted from discovery. Fed.R.Crim.P. 16(a)(2); *see also United States v. Spagnuolo*, 549 F.2d 705, 712–13 (9th Cir.1977); *Payden*, 613 F.Supp. at 820; *United States v. Smith*, 405 F.Supp. 144, 145 (E.D.Pa. 1975).

### H. *Brady* Materials

 Defendant seeks a broad range of materials relating to the government's prospective witnesses pursuant to *Brady*. (Defendant's Memorandum in Support of Motion for Discovery at 44–49.) The government generally agrees that the materials requested are discoverable under *Brady*. (Government's Memorandum at 66 n. *.) As the government points out, however, the defendant is not entitled to disclosure of the identities of all persons with knowledge relevant to the case (*see* section E, *supra*), nor is he necessarily entitled to production of the materials sought; the *Brady* requirements are satisfied when the prosecution directs the defendant to a source of exculpatory evidence available to him. *LeRoy*, 687 F.2d at 618–19; *United States v. Natale*, 526 F.2d 1160, 1170–71 (2d Cir.1975), *cert. denied*, 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976).

 Defendant also seeks an order requiring immediate production of all *Brady*

material. The prosecution has undertaken to supply *Brady* material to the defendant "in a manner which is useful to Nakashian and which is timed so as to avoid any delay at trial." (Government's Memorandum at 67.) That undertaking is sufficient to defeat defendant's motion. *Brady* and its progeny do not require production of exculpatory materials before trial, and the prosecution fulfills its obligations under *Brady* so long as the defendant is not prejudiced by delay in disclosure. *United States v. Holloway*, 740 F.2d 1373, 1381 (6th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984); *United States v. McPartlin*, 595 F.2d 1321, 1346 (7th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979); *United States ex rel. Lucas v. Regan*, 503 F.2d 1, 3 n. 1 (2d Cir.1974), *cert. denied*, 420 U.S. 939, 95 S.Ct. 1149, 43 L.Ed.2d 415 (1975); *Payden*, 613 F.Supp. at 821 ("The material must be disclosed in time for the effective use of the material at trial.").[5]

In light of the prosecution's acknowledgement of its obligations under *Brady*, defendant's motion for an order compelling immediate production of *Brady* materials is denied.

### I. Similar Act Evidence

 Defendant's motion for an order compelling disclosure of the government's intention to introduce "similar act" evidence in its case in chief pursuant to Fed.R. Evid. 404(b) is denied. The motion is presumably made pursuant to Fed.R.Crim.P. 12(d)(2), which requires the prosecution, upon defendant's request, to provide to the defendant the evidence which it intends to introduce in its direct case which is discoverable under Fed.R.Crim.P. 16. While a defendant's criminal record is discoverable under Rule 16(a)(1)(B), evidence of a defendant's prior wrongs or similar acts is not. *Payden*, 613 F.Supp. at 820; *United States v. Climatemp, Inc.*, 482 F.Supp. 376, 391 (N.D.Ill.1979), *aff'd mem.*, 705

---

**5.** To the extent that exculpatory material under *Brady* is contained in statements also subject to disclosure at trial pursuant to. 18 U.S.C. § 3500, courts have routinely held that the government's compliance with the *Jencks* act at trial provides timely disclosure under *Brady*. *See e.g., United States v. Campagnuolo*, 592 F.2d 852, 859–60 (5th Cir.1979); *United States v. Scott*, 524 F.2d 465, 467–68 (5th Cir.1975).

F.2d 461 (7th Cir.), *cert. denied,* 462 U.S. 1134, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983).

### Bill of Particulars

■ The defendant moves pursuant to Fed.R.Crim.P. 7(f) for a bill of particulars setting forth the details of the defendant's alleged participation in transactions in furtherance of the conspiracy. The purpose of a bill of particulars is to supplement the allegations in the indictment when necessary to (1) enable the defendant to prepare his defense, (2) avoid unfair surprise to the defendant at trial, and (3) preclude a second prosecution for the same offense. *Wong Tai v. United States,* 273 U.S. 77, 82, 47 S.Ct. 300, 302, 71 L.Ed. 545 (1927); *United States v. Salazar,* 485 F.2d 1272, 1277 (2d Cir.1973), *cert. denied,* 415 U.S. 985, 94 S.Ct. 1579, 39 L.Ed.2d 882 (1974). A bill of particulars is not to be used as a general discovery tool for the defense, and one should not be required merely to provide the defendant a pre-trial review of the government's evidence and legal theories. *See United States v. Gottlieb,* 493 F.2d 987, 994 (2d Cir.1974); *Payden,* 613 F.Supp. at 816; *Nelson,* 606 F.Supp. at 1390; *Wilson,* 565 F.Supp. at 1438–39; *United States v. Shoher,* 555 F.Supp. 346, 350 (S.D.N.Y.1983); *United States v. Mannino,* 480 F.Supp. 1182, 1185 (S.D.N.Y.1979).

■ In deciding a motion for a bill of particulars the court should determine whether the defendant has been sufficiently appraised, by means of the indictment, prior proceedings and discovery, "of the essential facts of the crime for which he has been indicted." *Salazar,* 485 F.2d at 1278; *see also Payden,* 613 F.Supp. at 816. The indictment in this case provides detailed information concerning three overt acts allegedly engaged in by the defendant, as well as considerable background relating to the alleged conspiracies. In addition, the government has provided through discovery other facts and copies of documents, including the names of the defendant's alleged co-conspirators. (Handal Aff., Exh. A at 1–4; Exh. D; Exh. E.) A defendant charged with conspiracy is not entitled to know before trial "the means by which it is claimed [he] performed acts in furtherance of the conspiracy," nor may the government be required to disclose the "[d]etails as to how and when the conspiracy was formed, or when each participant entered it." *Persico,* 621 F.Supp. at 868; *see also Payden,* 613 F.Supp. at 817; *Wilson,* 565 F.Supp. at 1438–39; *Shoher,* 555 F.Supp. at 350; *Agnello,* 367 F.Supp. at 450–51.

Together the indictment and the discovery provided by the prosecution give the defendant adequate notice of the charges against him, and his motion for a bill of particulars is denied.

### Preservation of Prosecution Materials

Defendant's motion for an order directing the government to preserve until trial any documents, tangible objects, notes or memoranda in its possession relating to this case is granted without opposition.

So ordered.