UNITED STATES of America, Plaintiff,

v.

Raul RODRIGUEZ, Defendant.

No. 91 Cr. 590 (MBM).

United States District Court,
S.D. New York.

Nov. 8, 1991.

Robert W. Ray, Asst. U.S. Atty., New York City, for plaintiff.

David Howe, Ezra and Ezra, New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Defendant Raul Rodriguez has moved for disclosure of the entire grand jury record and to dismiss the indictment based on alleged prosecutorial misconduct. In particular, he complains about the way the Assistant United States Attorney questioned him before the grand jury, including a question that contained the phrase "cock and bull story," which he says reflected improperly the prosecutor's disbelief in his testimony. For the reasons set forth below, the motion is denied.

### I.

Rodriguez is charged with participating in a conspiracy to sell kilogram quantities of cocaine. He appeared voluntarily to testify before the grand jury. His attorney was available outside the grand jury room and he was told he could consult with his attorney or cease his testimony at any time. The prosecutor instructed the grand jury that "only the testimony of the witnesses are [sic] evidence in this case concerning your consideration of the proposed indictment. Anything that I say is not evidence." Letter of Robert W. Ray to the Court, Oct. 4, 1991, Exh. A, p. 3 ("Ray Letter").

Rodriguez testified in substance that he had gone without prearrangement to a restaurant when a man he barely knew named Rafa asked him to accompany another man and carry a package outside to a car parked across the street. He said he expected to receive money for this modest errand, about $20 or $30. The Assistant United States Attorney questioned him pointedly about whether he knew what was in the package, which apparently turned out to contain approximately three kilograms of cocaine, and whether he knew

any other persons who were in the restaurant at the time or who had accompanied Rafa. He testified that he knew his codefendant Jose Sarroca, who was also in the restaurant, but whom he did not connect with the events relating to the package. He denied knowing what was in the package, asking what was in the package, or looking inside the package.

The prosecutor was aware at the time that the informant had had a conversation with Rodriguez in which the defendant showed he was aware of what was in the package, and that that conversation had been tape recorded.

After he was initially excused, Rodriguez returned to answer further questions, and added to his account that Rafa and the other man with him had said something about winning "the three numbers that you play in the lotto," which presumably would have made it more credible that they were willing to hand out a $20 or $30 tip for a task they could have performed with little or no exertion themselves. It was at this point that the prosecutor asked Rodriguez if he knew what a cock and bull story was.

At another point in the proceeding, a grand juror inquired whether Rodriguez "had any dealing with the law before? Has he been in trouble before?" That inquiry seems to have been relevant to the grand jury's evaluation of Rodriguez's sophistication or lack of it. When that question was posed to Rodriguez, it elicited that he had been arrested once before but the charges were dropped. Rodriguez objects as well to that testimony. The prosecutor instructed the grand jury as follows about that testimony:

"I want to caution you that this particular incident that he testified to should not in any way be considered by you adverse to his interests. It is clearly something where the charges were dropped. An arrest is obviously evidence of nothing and should not weigh in your deliberations of the proposed indictment."

Ray Letter, Exh. A p. 13.

## II.

■ A court has the duty to dismiss an indictment in the exercise of its supervisory powers when that extreme step is necessary to prevent prosecutorial impairment of the grand jury's independent dual role: to determine whether there is probable cause to believe a crime has been committed and to protect citizens against unfounded criminal prosecutions. *United States v. Hogan*, 712 F.2d 757, 761 (2d Cir.1983); see also, *Branzburg v. Hayes*, 408 U.S. 665, 686–87, 92 S.Ct. 2646, 2659–60, 33 L.Ed.2d 626 (1972). The cases in which such impairment has been found have been those in which prosecutors engaged in fundamental and pervasive unfairness, *United States v. Fields*, 592 F.2d 638, 647 (2d Cir.1978), such as by suggesting that the defendant had been convicted of other crimes and warranted indictment, *Hogan, supra*, or by misrepresenting hearsay as direct evidence. *United States v. Estepa*, 471 F.2d 1132, 1136–37 (2d Cir.1972). The record here neither establishes such impairment, nor suggests that further review of the grand jury record would disclose such impairment.

■ A grand jury proceeding is an *ex parte* investigation, not an adversary hearing. *United States v. Calandra*, 414 U.S. 338, 343–44, 94 S.Ct. 613, 617–18, 38 L.Ed.2d 561 (1974). Which is to say, a prospective defendant has no constitutionally protected right to appear before the grand jury considering his case. *United States ex rel. McCann v. Thompson*, 144 F.2d 604 (2d Cir.), *cert. denied*, 323 U.S. 790, 65 S.Ct. 313, 89 L.Ed. 630 (1944). It cannot be considered fundamentally unfair for a defendant who was permitted to testify and chose to avail himself of the opportunity, to be questioned closely and even skeptically about his exculpatory account, so long as the prosecutor makes clear to the grand jurors that they and not the prosecutor are the judges of the witness's credibility. *United States v. Nakashian*, 635 F.Supp. 761, 767 (S.D.N.Y.1986) ("Could you please just answer the question"; "Mr. Nakashian, come on. Isn't it a fact that ...?"), *rev'd on other grounds*, 820 F.2d 549 (2d Cir.), *cert. denied*, 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 392 (1987). As set forth above, the prosecutor

did so. Research has disclosed no authority that requires a prosecutor to react with wide-eyed ingenuousness to whatever escapes a defendant's lips.

The "cock and bull story" question was better left unasked, but was not entirely unprovoked. Rodriguez had given an account that may well have sounded highly improbable even to him. He then returned to the grand jury and, in an apparent effort to bolster plausibility at the margins, added the detail that Rafa and the other man with him were the recent beneficiaries of lotto winnings and were thus more inclined than they might otherwise have been to give a $20 or $30 gratuity in return for carrying across the street a paper bag that one of them had managed to bring to the restaurant unaided from some other location. The prosecutor's momentary lapse in referring to this testimony as a "cock and bull story" was not so prejudicial as to warrant dismissal of the indictment.

There is a presumption of regularity that attaches to grand jury proceedings such that a defendant is not entitled to a preliminary trial in which the court combs through the grand jury record in search of irregularities. *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). The proceedings described above do not rebut that presumption such that this defendant is entitled or the court is required to examine the remainder of the record to see whether error occurred.

Accordingly, the motion is denied.

SO ORDERED.